Sam Goldstein and Fay Goldstein v. Commissioner.
Goldstein v. Commissioner
Docket No. 5285-63.
United States Tax Court
T.C. Memo 1965-223; 1965 Tax Ct. Memo LEXIS 107; 24 T.C.M. (CCH) 1141; T.C.M. (RIA) 65223; August 17, 1965
Frank H. Levine, 225 West 34th St., New York, N. Y., for the petitioners. Robert D. Whoriskey, for the respondent. FAY
Memorandum Findings of Fact and Opinion FAY, Judge: The Commissioner determined deficiencies in petitioners' income tax as follows: Year
Deficiency
1957
$30,461.17
1958
3,218.93
1959
1,540.07 The parties have agreed to certain issues raised by the pleadings. The remaining issues for decision are: (1) Was the notice of deficiency arbitrary and erroneous thereby removing the presumption of correctness which attaches to the respondent's determination; (2) To what extent, if any, *108 were legal fees or expenses paid by a local union, of which petitioner Sam Goldstein was president during the years in issue, income to petitioners; and (3) The proper amount of petitioners' medical deduction for the years 1958 and 1959. The answer to this latter issue is wholly dependent upon the outcome of the second issue. Findings of Fact Some of the facts have been stipulated, and the stipulation of facts, together with the exhibits attached thereto, is incorporated herein by this reference. Petitioners Sam Goldstein (hereinafter referred to as petitioner) and Fay Goldstein are husband and wife residing in Jericho, New York. They filed their joint Federal income tax returns for the years in issue with the district director of internal revenue, Brooklyn, New York. Petitioners filed their tax returns on the basis of the calendar year using the cash receipts and disbursements method of accounting. During the years 1956 to approximately July 1959, inclusive, petitioner was employed as president of Local Union 239, International Brotherhood of Teamsters (hereinafter sometimes called Local 239). On June 18, 1956, petitioner, Max Chester (hereinafter referred to as Chester), *109 and John Dioguardia (hereinafter referred to as Dioguardi) were indicted together on one count of conspiracy and three counts of bribery of labor representatives under sections 580 and 380 of the Penal Law of the State of New York. On or about July 1, 1957, the three codefendants were tried together before the Court of General Sessions, County and State of New York, on the four counts set forth in the indictment. On or about July 25, 1957, a jury returned verdicts against each defendant, finding petitioner guilty of counts 1 (conspiracy), 2, and 3 (bribery); Dioguard guilty of counts 1 (conspiracy) and 2 (bribery); and Chester guilty of counts 1 (conspiracy), 2, 3, and 4 (bribery). On September 5, 1957, petitioner was sentenced on count 1 to be imprisoned in the penitentiary of the city of New York for a term of one year. On count 2, petitioner received the same sentence, which was to run consecutively to the sentence imposed under count 1. On count 3, he received the same sentence, which was to run concurrently with the sentence imposed under count 2 and consecutively to the sentence imposed under count 1. Additionally, petitioner was fined $500 on each of counts 1, 2, and 3. On or *110 about September 10, 1957, petitioner filed a notice of appeal to the Appellate Division, First Department, State of New York, from the judgment of conviction of counts 1, 2, and 3 which had been entered against him by the Court of General Sessions, County and State of New York. By stipulation of the parties, i.e., petitioner and the District Attorney, New York County, dated February 20, 1959, the appeal was withdrawn and an order to that effect entered by the Appellate Division, First Department, State of New York, dated February 27, 1959. Petitioner served the sentences, subsequently modified by Court order, which were imposed upon his judgment of conviction for counts 1, 2, and 3. Chester and Dioguardi received similar sentences upon their respective judgments of conviction, filed a notice of appeal on or about September 16, 1957, and served their sentences in State prison. Neither Chester nor Dioguardi were members of, or employees of, Local 239 during the years from October 1, 1955 to 1959, inclusive. On March 5, 1957, petitioner was indicted under sections 530, 580, 850, and 851 of the Penal Law of the State of New York by a New York County Grand Jury for one count of conspiracy, *111 a second count of attempt to commit the crime of extortion, a third count of coercion, and fourth, fifth, sixth, and seventh counts of extortion. Upon arraignment on March 25, 1957, petitioner pleaded not guilty. On February 26, 1958, before trial of his case, petitioner pleaded guilty to the second count of the indictment, i.e., attempt to commit the crime of extortion. On February 13, 1959, he was sentenced to State prison for not less than three years, nor more than five years, with execution of the sentence suspended and petitioner placed on probation. The executive board of Local 239 agreed that all legal expenses and fees incurred in defending petitioner would be borne by the Union. This decision was initially made on June 21, 1956. On September 10, 1957, the minutes of the executive board reflect the following: Brother Stein reported on the present situation of our President, Samuel Goldstein and the continuous fight on the part of the Local and officers to completely vindicate and clear our President of all charges. He reported on the legal expenses incurred in line with the decision of the Executive Board on June 21st, 1956, and endorsed by the Steward Council meetings *112 and the meetings of the Wage Policy Committee. He pointed out that without doubt the legal expenses involved in the appeal would also be considerable and indicated that at this time, the Executive Board should make decision on whether or not the Local should accept the financial responsibility for these expenses. Brother Morello took the floor and pointed out that if it had not been for the tireless energy and devotion displayed by Brother Goldstein, this Union would not have come into existence, nor would there have been any treasury from which to draw in times of stress such as this. Brother Amato took the floor expressing substantially the same words expressed by the previous speaker and added that it was his opinion that the Local Union had a moral responsibility for Brother Goldstein in this crisis. Brother Zapka then made a motion approving that all actions taken in the past by Brother Stein with regard to the disbursement of funds for Brother Goldstein's legal fees and moved further that the Executive Board instruct the Treasurer to pay all necessary legal fees in connection with the forthcoming appeal or on any other indictments facing Brother Goldstein. The motion was seconded *113 by Morello and approved unanimously by the board. * * * The books and records of Local 239 reflect that the following legal fees and expenses were paid during the years 1957, 1958, and 1959. Date
Explanation in Cash
1957
Payee
Amount
Disbursements Book
Mar. 12
Oscar Bloustein
$ 500.00
Legal Retainer
27
Oscar Bloustein
250.00
Legal Fee
27
Al Newman
180.00
Bail Bond
May 3
Michael Direnzo
1,000.00
Legal Fee
3
Oscar Bloustein
500.00
Legal Fee
June 6
Michael Direnzo
1,000.00
Legal Fee
6
Oscar Bloustein
500.00
Legal Fee
25
Michael Direnzo
1,000.00
Legal Fee
25
Oscar Bloustein
500.00
Legal Fee
26
Irwin T. Shaw
500.00
Minutes - Legal Fee
26
No. 1, 5th Ave. Hotel
100.00
Conference - Legal Fee
28
No. 1, 5th Ave. Hotel
150.00
Conference - Legal
July 3
Irwin T. Shaw
500.00
Legal Minutes
5
Joseph M. McDonough
5,000.00 [1]
Legal Retainer
9
Irwin T. Shaw
500.00
Minutes Trial
10
Michael Direnzo
1,000.00
Legal Fee
10
Oscar Bloustein
500.00
Legal Fee
10
Jack Mandelbaum
500.00
Legal Fee
10
Irwin T. Shaw
500.00
Trial Minutes
10
No. 1, 5th Ave. Hotel
150.00
Conferences
12
Oscar Bloustein
35.00
Expenses Incurred
12
Irwin T. Shaw
500.00
Trial Minutes
26
One Fifth Ave. Hotel
145.95
Conferences
30
One Fifth Ave. Hotel
34.23
Conferences
Aug. 5
Oscar Bloustein
1,000.00
Legal Fee
5
Michael Direnzo
1,000.00
Legal Fee
7
Irwin T. Shaw
525.60
Court Minutes
13
Joseph M. McDonough
5,000.00 [1]
Legal Fee
14
Harris B. Steinberg
10,000.00
Legal Fee
16
Michael Direnzo
472.00
Expenses Incurred
16
Michael Direnzo
500.00
Legal Fee
Sept. 9
Norman Grant
35.20
Court Minutes
Oct. 11
Case Press Inc.
3,000.00
Minutes Appeal
25
Al Newman
105.00
Bail Bond
25
Hannibal Milano
2,500.00
Legal Fee
Nov. 1
Michael P. Direnzo
1,000.00
Legal Fee
14
Hannibal Milano
17,500.00
Legal Fee
Sub-Total
58,182.98
1958
Jan. 2
Case Press, Inc.
2,500.00
Minutes Appeal
7
Jack Mndelbaum
1,000.00
Legal Fee
May 9
Michael Direnzo
500.00
Legal Fee
June 3
Hannibal Milano
800.00
Legal Expenses
26
Case Press, Inc.
1,002.63
Appeal Record
Aug. 19
Oscar Bloustein
300.00
Legal Fee
28
Hannibal Milano
300.00
Legal Fee
Oct. 3
Hannibal Milano
200.00
Legal Fee
Sub-Total
6,602.63
1959
Jan. 8
Hannibal Milano
300.00
Legal Fee
Mar. 6
Harris B. Steinberg
750.00
Legal Services
Mar. 12
Lauritano & Schiacter
$ 3,000.00 [1]
Legal Services
July 2
Michael Direnzo
867.92
Legal Fee and Expenses
Sub-Total
4,917.92
TOTAL
$69,703.53
*114 The following attorneys entered appearances on behalf of petitioner in the criminal action stemming out of the 1956 indictment: Oscar A. Bloustein Michael Direnzo Jacob M. Mandelbaum Although not entering appearances in the action, Hannibal Milano and Francis X. Mancuso also aided petitioner in his defense. The following attorneys entered appearances on behalf of petitioner in the criminal action stemming from the 1957 indictment: Oscar A. Bloustein Hannibal Milano Francis X. Mancuso Michael Direnzo Bloustein, Milano, and Direnzo, besides representing petitioner, also represented Local 239 in matters unrelated to the New York criminal actions involving petitioner. They all had occasion to represent the Union before a United States Senate Committee investigating certain labor unions and their practices. In addition, Milano represented a Pat Goldberg, named as a coconspirator with petitioner in the 1957 indictment. Bloustein had occasion to also represent the Union in a matter before the New York County District Attorney's office. He was also retained by the Union *115 as its representative in the criminal trial involving petitioner, Chester, and Dioguardi. Michael Direnzo's fee for his representation of petitioner was $2,000. This fee was paid in 1957 by Local 239. Hannibal Milano and Francis X. Mancuso's fee for representing petitioner was $5,000. This fee was paid in 1957 to Milano by Local 239. Bloustein's fee for representing petitioner was $1,000. This fee was paid in 1957 by Local 239 to Bloustein. All other fees paid by Local 239 to Direnzo, Milano, and Bloustein were not for legal or other services rendered to petitioner. A representative of the Senate Committee investigating labor and union practices prepared a worksheet showing the legal fees paid by Local 239 for the period January 1, 1956, through and including May 31, 1959. This worksheet was prepared from information submitted to the Committee by Local 239, including the latter's books and records. The worksheet in all material aspects reflects the same total amount paid as is reflected in the schedule set forth supra. A revenue agent obtained the worksheet and transcript of testimony in 1960 from a special agent who in turn obtained it from the Committee. He examined the worksheet *116 and read the testimony and arrived at a proposed deficiency in petitioner's income tax for the years in issue. The revenue agent determined that all of the fees paid by Local 239 were for the benefit of petitioner. The revenue agent based his determination on the worksheet and on testimony taken before the Committee, which reflected that most of the fees were for petitioner's criminal involvement. The revenue agent did not, prior to the issuance of the notice of deficiency, examine the books and records of Local 239, contact any official of Local 239, or make any attempts to contact the attorneys whose names appear on the worksheet as being the recipients of fees. The revenue agent was aware of petitioner's criminal matters which arose in 1956 and continued in 1957, 1958, and 1959. The revenue agent's proposed determination was discussed with petitioner's tax counsel. The revenue agent's proposed determination became the basis for the notice of deficiency in this case. Opinion Petitioner's principal contention is that the deficiency notice here involved is arbitrary and erroneous thereby removing the presumption of correctness which attaches to respondent's determination. If the *117 notice is not arbitrary, then petitioner contends that the affirmative evidence is sufficient to show that most of the expenses paid by the Union were not on behalf of services rendered to petitioner. Respondent, on the other hand, maintains that his notice is not arbitrary, that the presumption of correctness does attach, and that petitioner has failed in his burden of proof to overcome said presumption. Petitioner, over the objection of respondent's counsel, introduced testimony of the revenue agent who examined petitioner's returns for the years in issue. The testimony reflects that the revenue agent obtained a schedule prepared by a Senate Committee setting forth all of the legal expenses paid by Local 239 during the three-year period here in issue. The revenue agent also had access to and read the testimony of witnesses appearing before said Committee pertaining to the legal expenses of Local 239. The revenue agent was also apprised of the criminal actions in which petitioner was involved, including the pertinent dates and the names of the attorneys representing petitioner. With this information, the revenue agent made the determination that is now in issue. Furthermore, petitioner *118 did not offer any evidence that during conferences held with the revenue agent prior to the issuance of the notice that the agent refused to look at the Union's books and records, that the books and records were available, or that the agent was in any way unwilling to cooperate in a full investigation of the case. On this record we cannot say that respondent's determination is arbitrary and erroneous. Nor does the fact that respondent has conceded prior to trial that part of his determination is incorrect and excessive render the entire notice arbitrary. , affd. (C.A. 7, 1964), certiorari denied . Respondent's agent had sufficient information with which to justify his determination as being reasonable. The fact that he did not do all the things petitioner contends should have been done prior to the issuance of the notice of deficiency does not indicate that the available information was not sufficient to form the basis of a reasonable determination. Accordingly, we hold that the notice of deficiency here in issue was not arbitrary and that the presumption of correctness *119 attaches thereto. Respondent determined that petitioner received additional income during the years in issue. These amounts represent the total legal expenses paid by Local 239 with a few exceptions not here material. We have already found that respondent's determination is presumed correct and that petitioner has the burden of proof to overcome this presumption. Petitioner has met his burden to a limited extent. We have set forth in our Findings of Fact which amounts paid by Local 239 to Bloustein, Direnzo, and Milano were for services rendered to petitioner. These amounts represent income to petitioner during the years in which they were paid. . Since petitioner failed to offer any evidence regarding amounts paid by Local 239 to various other persons, we sustain respondent's determination on this issue except as noted above. The remaining issue in this case concerns the proper medical deduction to which petitioners are entitled for the years 1958 and 1959. The resolution of this issue, contrary to respondent's argument, depends entirely upon our determination regarding the legal fees issue. Accordingly, the proper medical *120 deduction will be computed under Rule 50 to conform to our determination regarding the second issue. To reflect concessions of the parties, Decision will be entered under Rule 50. Footnotes
1. Respondent concedes these fees were not paid on account of services rendered to petitioner.↩